**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PHL6 LLC,<br><br>　　　　　**Plaintiff,**<br><br>　　v.<br><br>**PENNBROOK PORTFOLIO CC, LLC,**<br>　　　　　**Defendant.** | CIVIL ACTION<br><br><br><br>NO.  25CV247 |

## MEMORANDUM OPINION

Plaintiff PHL6 LLC, as successor in interest to Computershare Trust Association, in its capacity as trustee for certain mortgage note holders ("Computershare"), brings this Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 against Defendant Pennbrook Portfolio CC, LLC, seeking foreclosure of a mortgage. [1]  For the reasons set forth below, the Motion shall be granted, and summary judgment shall be entered in favor of PHL6.

### I.　FACTUAL BACKGROUND

On February 10, 2023, LMF Commercial, LLC (the "Original Lender"), issued to Pennbrook a commercial mortgage loan in the principal amount of $7,580,000.00 (the "Loan"). The Loan is evidenced by a Promissory Note of the same date, executed by Pennbrook in favor of the Original Lender (the "Note").

To secure repayment of the Note, Pennbrook executed in favor of the Original Lender an Open-End Mortgage, Security Agreement and Fixture Filing (the "Mortgage"), effective

---

[1] On December 22, 2025, this Court ordered that PHL6 LLC be substituted as a party, pursuant to Federal Rules of Civil Procedure 17(a) and 25(c), in place of Computershare following Computershare's assignment of its rights, title, and interest in the Mortgage and Personal Property to PHL6.  Although the motion for summary judgment was filed by Computershare on August 28, 2025, PHL6 now stands in Computershare's place with respect to that motion.  *See* Fed. R. Civ. P. 17(a)(3) ("After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.").  Nothing in the record indicates that PHL6 intended otherwise; to the contrary, PHL6 has filed several replies in support of Computershare's original motion.

1

February 10, 2023.  The Mortgage encumbers several pieces of real property owned by Pennbrook, located at: (i) 2027 Pine Street, Philadelphia, Pennsylvania 19103; (ii) 716 S. 2nd Street, Philadelphia, Pennsylvania 19147; (iii) 716 South Street, Philadelphia, Pennsylvania 19147; (iv) 750-752 S. Martin Street, Philadelphia, Pennsylvania 19146; and (v) 902 Spruce Street, Philadelphia, Pennsylvania 19106 (collectively, the "Property").  After origination, the Loan was assigned multiple times, ultimately securitized, and then assigned to Computershare.

Under the terms of the Loan Agreement, Pennbrook was required to make a "Monthly Debt Service Payment," meaning "an amount equal to all interest that is scheduled to accrue on the Outstanding Principal Balance during the Accrual Period in which each such Payment Date occurs, as such amount may be adjusted in connection with any permitted partial prepayment in accordance with this Agreement."[2]  These payments were due on the sixth day of each month. The Loan Agreement specifies that if "any monthly Debt Service . . . is not paid when due," an Event of Default occurs.  Upon the occurrence and continuance of an Event of Default, the Loan Agreement authorizes the Lender, "without notice or demand," to take action including, "declaring the Debt to be immediately due and payable," and "enforc[ing] or avail[ing] itself of any or all rights or remedies . . . including . . . all rights or remedies available at law or in equity."  The Mortgage likewise provides that, upon the occurrence of an Event of Default, the Lender may, among other things, "declare the entire unpaid Debt to be immediately due and payable" and "institute proceedings, judicial or otherwise, for the complete foreclosure of this Security Instrument under any applicable provision of law."

---

[2] Pursuant to the Loan Agreement, during the "Initial Accrual Period," which extends through the Loan's maturity date of February 6, 2033, Pennbrook was obligated to pay interest only and was not required to make payments toward the principal balance.  On the maturity date, February 6, 2033, the entire outstanding principal balance would become due.

The record reflects that beginning in May 2023, Pennbrook was delinquent in making its required monthly payments.  Then, after July 2024, Pennbrook ceased making payments entirely.[3]

On September 16, 2024, Computershare, through counsel, issued a Notice of Default and Demand for Payment to Pennbrook via FedEx, addressed to Pennbrook's notice address of record.[4]  The Notice of Default stated that "in the event that delinquent amounts are not paid in full within seven days of the date of [the] notice, at the option of lender, the debt may be accelerated and declared to be immediately due and payable and demand made for the immediate and full payment of same, and lender may exercise such other and further rights, including but not limited to foreclosure and its other remedies under the loan documents, as Lender in its discretion may deem appropriate."

Despite the Notice of Default, Pennbrook failed to cure the default by paying the amounts due to Computershare.[5]  On October 14, 2024, Plaintiff, through counsel, issued a Notice of Acceleration to Pennbrook via overnight delivery, advising that "the Debt secured by the Mortgage is hereby accelerated and declared to be immediately due and payable" and that "demand is hereby made of [Pennbrook] for the immediate and full payment of the Debt."[6]

Thereafter, Computershare, acting by and through its special servicer K-Star Asset

---

[3] Pennbrook summarily denies that it was delinquent or late in making its payments and specifically challenges the sufficiency of the evidence offered to establish those facts.

[4] Pennbrook does not dispute the existence of the Notice but contests whether it was properly delivered or received. The Loan Agreement provides that "[a]ll notices or other written communications hereunder shall be deemed to have been properly given . . . one (1) Business Day after having been deposited for overnight delivery with any reputable courier service," when addressed to certain specified notice addresses of record.

[5] Pennbrook also summarily denies that failed to cure any default and specifically challenges the sufficiency of the evidence offered to establish this fact.

[6] Pennbrook likewise disputes that the evidence establishes this notice was delivered.

Management LLC ("K-Star"), filed this mortgage foreclosure action against Pennbrook, alleging that Pennbrook defaulted on the commercial mortgage by failing to pay the amounts due under the Loan.

## II.   LEGAL STANDARDS

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"A disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law," *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 771 (3d Cir. 2009) (citation omitted), and an issue of material fact is "genuine," and thus warrants trial, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248-49, 252. In evaluating a summary judgment motion, the facts are viewed in the light most favorable to the nonmoving party, and any reasonable inferences must be made in that party's favor. *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party has the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must then present affirmative evidence from which a reasonable trier of fact could return a verdict in its favor. *Anderson*, 477 U.S. at 257.

### III.   DISCUSSION

#### A.  Standing

Pennbrook first argues that Plaintiff lacked standing to bring this mortgage foreclosure action because it has failed to establish that it was the holder of the Note at the time the action was commenced.

Generally, in foreclosure actions, federal courts apply the law of the state in which the property is located, which here is Pennsylvania.  *See US Bank NA as Tr. for Registered Holders of J.P. Morgan Chase Com. Mortg. Sec. Corp. v. B R Penn Realty Owner LP*, 137 F.4th 104, 107 (3d Cir. 2025) ("Mortgage foreclosures are typically governed by state law . . ."); *Chuong Van Tran v. SN Servicing Corp.*, 2018 WL 1875221, at *2 (E.D. Pa. Apr. 18, 2018).[7]  Under Pennsylvania law, a plaintiff has standing to bring a mortgage foreclosure action if it possesses the note.  *See BAC Home Loans Servicing, LP v. Gubrud*, 2014 WL 10588231, at *6 (Pa. Super. Sept. 11, 2014) ("To have standing to bring a foreclosure action on property used to secure a note, a party need only establish actual possession of the note.") (citing *JP Morgan Chase Bank, N.A. v. Francis X. Murray,* 63 A.3d 1258, 1266 (Pa. Super. 2013)).  Pennbrook contends that this is insufficient and that Plaintiff must also establish a chain of possession and that Computershare was a "holder" of the note.  That argument is incorrect.  "[A] note securing a mortgage is a negotiable instrument under Pennsylvania's Uniform Commercial Code ("PUCC"), enforceable by its possessor, regardless of doubts about the chain of possession or the status of the possessor as a 'holder' of the note under the UCC."  *Potoczny v. Aurora Loan Servs., LLC*, 33 F. Supp.3d 554, 565 (E.D. Pa. 2014), *aff'd sub nom. Potoczny v. Aurora Loan Servs.*, 636 F. App'x 115 (3d

---

[7]  Both the Loan Agreement and the Mortgage provide that this foreclosure action should be governed by "the law of the state in which the property is located."

Cir. 2015) (citing *Murray,* 63 A.3d at 1263-66 (Pa. Super. 2013).

Pennbrook also argues that Plaintiff offers only conclusory assertions of possession and that such assertions are insufficient to establish standing.  Again, Pennbrook is mistaken. Computershare has submitted not only an affidavit attesting to its possession of the Note at the time suit was filed but also copies of the original Mortgage together with the relevant alonges. Pennsylvania courts have found similar evidence sufficient to establish standing.  *See Residential Credit Opportunities Tr. v. Two Easy Enter.*, LLC, 251 A.3d 1211 (Pa. Super. 2021) (holding that possession, and thus standing, was established where the plaintiff "produced copies of the original recorded mortgage and its recorded assignment" and there was "an affidavit from the mortgage servicer, confirming that Appellee is in possession of the original promissory note"). Plaintiff has therefore established standing.

### B.  Authority of Special Servicer

Pennbrook next argues that K-Star, the Special Servicer, was not authorized to initiate this mortgage foreclosure proceeding on behalf of Computershare.  Pennbrook contends that "a bare assertion of authorization does not eliminate the [possibility of a] factual dispute," and points to the Pooling and Servicing Agreement ("PSA"), asserting that it provides no evidence of such authority because only a portion of the agreement—ten of more than two hundred pages— was submitted.  Pennbrook further argues that "[n]o evidence provided demonstrates compliance with any PSA transfer provisions or establishes the scope of authority delegated for litigation, and no independent authentication of agency is provided."

That argument is unpersuasive.  "A servicer can establish its authority to initiate the legal action if it demonstrates that its contractual duties to the mortgage holder include not just the collection of payments, but also the conduct of mortgage foreclosure and other legal proceedings

on the holder's behalf." *In re Alcide*, 450 B.R. 526, 538 (Bankr. E.D. Pa. 2011).  Here, the Loan Agreement expressly provided Computershare with the right to delegate its responsibilities to an agent.  *See* Loan Agreement § 8.3 ("the Loan may be serviced by a . . . special servicer . . . selected by Lender and Lender may delegate all or any portion of its responsibilities under this Agreement and the other Loan Documents to Servicer pursuant to a pooling and servicing agreement…and/or other agreement providing for the servicing of [the Loan] between Lender and Servicer.").  Computershare exercised that authority through a Limited Power of Attorney, attached as an exhibit to Plaintiff's Motion for Summary Judgment, appointing K-Star Asset Management LLC as its attorney-in-fact with respect to the Loan and related collateral, including authority "to execute and/or file such documents and take such other action as is proper and necessary to defend the Trustee . . . in litigation."

Pennbrook does not meaningfully engage with these documents.  Instead, it relies on *Basile v. H&R Block, Inc.* for the general proposition that agency must be proven, not assumed. 761 A.2d 1115, 1120 (Pa. 2000).  That principle is not in dispute.  But, "[a]n agency relationship may be shown by express contract," and Plaintiff has done exactly that here by providing the attached Limited Power of Attorney.  *See Exact Precision, Inc. v. Accura Zeisel Mach. Corp.*, 1999 WL 1197899, at *2 (E.D. Pa. Dec. 15, 1999) (citing *Pirilla v. Bonucci,* 467 A.2d 821, 824 (Pa. Super. 1983)).  Accordingly, the Court concludes that K-Star was authorized to initiate this action on behalf of Computershare.

### C. Merits[8]

---

[8] Pennbrook had several other affirmative defenses in its Answer to the Complaint that it did not raise again in its response in opposition to summary judgment.  Accordingly, this Court need not consider those affirmative defenses, as they have been forfeited.  *See DLJ Mortg. Cap., Inc. v. Stevens*, 167 F.4th 632, 635 (3d Cir. 2026) ("[A] party's failure to raise a defense in opposition to summary judgment forfeits that defense, even if the party raised it in an answer earlier in the litigation.").

Under Pennsylvania law, "[t]he holder of a mortgage has the right, upon default, to bring a foreclosure action." *Bank of Am., N.A. v. Gibson*, 102 A.3d 462, 464 (Pa. Super. 2014) (citing *Cunningham v. McWilliams*, 714 A.2d 1054, 1056-57 (Pa. Super. 1998)).

At the summary judgment stage, a court may grant summary judgment to a mortgagee-plaintiff in a foreclosure action "if there is no issue of material fact as to whether (1) the mortgage is in default; (2) defendant has failed to pay interest on the mortgage; and (3) the recorded mortgage is in the amount specified by plaintiff mortgagee." *U.S. Bank Nat. Ass'n v. Lighthouse Whitehall Commons, LLC*, 2012 WL 4473232, at *4 (E.D. Pa. Sept. 28, 2012) (citing *Landau v. Western Pennsylvania National Bank,* 282 A.2d 335, 340 (Pa. 1971)).  The parties do not dispute that the recorded mortgage loan was in the amount of $7,580,000.00.  They disagree, however, as to whether the evidence provided supports that the mortgage was in default and whether Pennbrook failed to make the required interest payments.

To establish that there is no genuine dispute as to these facts, Plaintiff relies on a declaration from Matthew Furay, a Servicing Officer with K-Star who was primarily responsible for administering and servicing the Loan on Computershare's behalf, as well as on an attached document detailing the loan payment history, taken from the mortgage servicer's platform.  In his declaration, Matthew states that Pennbrook "was frequently delinquent with its monthly payments" and, accordingly, that the loan was in default.  He relied on the same loan payment history document to support that conclusion.

Pennbrook denies that it was frequently delinquent in making its monthly Debt Service payments beginning in May 2023 or that it failed to make any such payments beginning in

August 2024. But rather than offering contrary evidence, Pennbrook argues only that Plaintiff's position "relies on a payment history without sufficient foundation establishing integration and reliability of business records." Pennbrook thus contends that Plaintiff has failed to establish the absence of a genuine dispute of material fact because its showing rests on inadmissible evidence.

Federal Rule of Civil Procedure 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). But Pennbrook's objection does not create a genuine factual dispute because it cites no authority supporting its contention that Plaintiff's evidence would indeed be inadmissible.

The sole authority Pennbrook cites is *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156 (3d Cir. 2009), for the proposition that "[w]here records are received from a prior servicer, as is the case here, the affiant must demonstrate knowledge of the integration and reliability of those records." But *Kirleis* says no such thing. Rather, the Third Circuit in *Kirleis* evaluated whether an affidavit submitted by a non-moving party in opposition to summary judgment constituted sufficient affirmative evidence to create a genuine dispute of material fact. *Kirleis*, 560 F.3d at 161. Pennbrook has submitted no such evidence here.

What remains, then, is Pennbrook's unsupported assertion that Plaintiff's evidence is inadmissible. That is not enough. An argument unsupported by pertinent authority is forfeited.[9] *See Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997) ("[A]n argument consisting of no more than a conclusory assertion such as the one made here . . . will be deemed waived."); Local

---

[9] While many prior opinions have referred to this concept as "waiver," the Third Circuit recently clarified that the more precise term is "forfeiture." *See DLJ Mortg. Cap., Inc. v. Stevens*, 167 F.4th 632, 635 (3d Cir. 2026) ("Under our precedents, when a litigant raises an argument 'in passing (such as, in a footnote)' but fails to 'squarely argue[ ]' it, we consider it a forfeiture, not a waiver." (quoting *Kalu v. Spaulding*, 113 F.4th 311, 344 n.21 (3d Cir. 2024)).

Rule 7.1(c) ("Every motion not certified as uncontested, or not governed by Local Civil Rule 26.1(g), shall be accompanied by a brief containing a concise statement of the legal contentions *and authorities relied upon* in support of the motion.") (emphasis added); *see also Heatherly*, 985 F.3d at 270 (treating failure to "develop[ ] . . . arguments properly" as forfeiture).

Absent a supported evidentiary objection, all that remains is Pennbrook's general denial that it was late on its payments and therefore in default.  That is insufficient to create a genuine dispute of material fact.  Plaintiff has established that the mortgage was in default, that Pennbrook failed to make the required interest payments, and that the loan amount was as Plaintiff stated.  Summary judgment is therefore warranted, and foreclosure is proper.  *See*, *e.g.*, *United States v. Harding*, 2013 WL 3989155, at *3 (M.D. Pa. Aug. 2, 2013) (granting summary judgment in a foreclosure action where defendants "failed to adduce any evidence showing that they are not in default on their Mortgage, whereas Plaintiff has fully documented Defendants' default").[10]

### D.  Damages

Pennbrook argues that, even if summary judgment on the merits is warranted, material

---

[10] Pennbrook also argues summary judgment is improper because Plaintiff "has not produced proof of delivery of the Notice of Default, proof of delivery of the Notice of Acceleration, tracking confirmations, or affidavits of mailing," and that there is therefore a material dispute as to whether proper notice was given.  Plaintiff responds that whether there was proper notice is immaterial because Pennbrook waived its right to notice.

Section 9.11 of the Loan Agreement provides that "[Pennbrook] hereby expressly waives the right to receive any notice from Lender with respect to any matter for which this Agreement or the other Loan Documents do not specifically and expressly provide for the giving of notice by Lender to [Pennbrook]."  The Loan Documents do not specifically and expressly require notice for either an Event of Default or acceleration.  *See* Loan Agreement § 7.1; *see also* Loan Agreement § 7.2 ("Upon the occurrence and continuance of an Event of Default . . . Lender may take such action, without notice or demand . . . including, without limitation, declaring the Debt to be immediately due and payable.").  Nor has Pennbrook contested the legality of these waiver provisions.

Accordingly, because Pennbrook waived its right to notice with respect to both an Event of Default and acceleration, whether Pennbrook in fact received notice is immaterial, and summary judgment remains proper.

disputes as to damages preclude the Court from entering judgment on damages at this stage.

### i.    *Default Interest Amount*

Plaintiff seeks $852,750.00 in "Default Interest."  Pennbrook challenges this amount, arguing that although Plaintiff stated complete nonpayment began in August 2024, Plaintiff applied default interest retroactively to May 2023.  Pennbrook appears to contend that default interest could not accrue absent complete nonpayment and that Plaintiff's "accrual methodology is unclear and internally inconsistent."

Section 2.21 of the Loan Agreement provides that "[u]pon the occurrence and during the continuance of an Event of Default, interest on the Outstanding Principal Balance and . . . overdue interest in respect of the Loan, shall accrue at the Default Rate."  The "Default Rate" is defined as "a rate per annum equal to the lesser of (a) the Maximum Legal Rate, or (b) five percent (5%) above the Applicable Interest Rate."  In its statement of Undisputed Material Facts, Plaintiff says it "calculated the default interest due by applying the Default Rate to the principal balance of the Loan for the period since [Pennbrook] initially defaulted (and for periods during which it remained delinquent) by failing to make a timely payment of the Monthly Debt Service Payment Amount due for May 2023."

The Payoff Statement attached to Plaintiff's motion reflects that default interest at 5% above the Applicable Interest Rate was applied from May 6, 2023, to May 22, 2023; from June 6, 2023, to June 27, 2023; from July 6, 2023, to July 27, 2023; from August 6, 2023, to September 5, 2023; and from September 6, 2023, to August 28, 2025, the date the summary judgment motion was filed.  Those charges correspond to periods during which Pennbrook was in default.  As established above, once Pennbrook failed to make a required payment when due, an Event of Default occurred under the Loan Documents, and default interest could accrue

11

during the continuance of that default.  Accordingly, the Court sees no deficiency in Plaintiff's

supporting documentation, and Pennbrook identifies no specific inconsistency in Plaintiff's

calculations.  Therefore, there is no material dispute as to the default interest amount.

### ii. Attorneys' Fees

Plaintiff seeks $93,505.75 in attorneys' fees.  Pennbrook challenges Plaintiff's request for

attorneys' fees, arguing that "Plaintiff has not submitted detailed time records, hourly rates, a

rate analysis, an affidavit of counsel establishing reasonableness."

Under Pennsylvania law, "parties may contract to provide for the breaching party to pay

the attorney fees of the prevailing party in a breach of contract case" as long as such fees are

"reasonable."  *McMullen v. Kutz*, 603 Pa. 602, 985 A.2d 769, 776–77 (2009).  The party seeking

attorneys' fees bears "the burden . . . to justify a fee request."  *Carmen Enters., Inc. v.

Murpenter, LLC*, 185 A.3d 380, 390 (Pa. Super. 2018) (citation omitted).  "Under Pennsylvania

law, to determine a reasonable fee for purposes of a contractual fee-shifting provision, analysis

begins with the lodestar figure, which is calculated by multiplying the total number of reasonably

expended hours by the reasonable hourly rate."  *Farhangui v. Grossinger*, 2021 WL 1105317, at

*2 (E.D. Pa. Mar. 23, 2021) (citing *Krebs v. United Ref. Co. of Pa.*, 893 A.2d 776, 790 (Pa.

Super. 2006)).

Here, Plaintiff has attached only an exhibit listing the total invoice amount and has not

provided billing records, the hours worked, the hourly rates charged, or any affidavit addressing

the reasonableness of the requested fees.  On this record, an award of attorneys' fees is not

warranted, as Plaintiff has failed to meet its burden to justify the fee request.[11]

---

[11] This ruling does not foreclose Plaintiff from seeking such an award separately pursuant to Federal Rule of Civil Procedure 54(d).

### iii.    *Yield Maintenance*

Plaintiff seeks $1.45 million as the "Yield Maintenance Premium."  Section 2.3.3 of the

Loan Agreement provides that "[i]f, following an Event of Default, payment of all or any part of

the Debt is tendered by [Pennbrook] or otherwise recovered by Lender, . . . [Pennbrook] shall

pay," among other items, "an amount equal to the Yield Maintenance Default Premium."  The

Loan Agreement defines the "Yield Maintenance Default Premium" as:

> an amount equal to the greater of: (i) three percent (3%) of the principal amount
> of the Loan being repaid and (ii) the excess, if any, of (a) the present value
> (determined using a discount rate equal to the Treasury Rate at such time) of all
> scheduled payments of principal and interest payable in respect of the principal
> amount of the Loan being repaid provided that the Note shall be deemed, for
> purposes of this definition, to be due and payable on the Free Window Date, over
> (b) the principal amount of the Loan being repaid

Pennbrook first argues, citing *Holt's Cigar v. 222 Liberty Assocs.*, that the Yield

Maintenance Premium is an unenforceable penalty.  591 A.2d 743, 749 (Pa. Super. 1991)

(vacating an award of damages where "the stipulated sum [was] not [] a reasonable forecast of

anticipated damages due to delay, but rather . . . a penalty to discourage breach").  That argument

fails.  Under Pennsylvania law, yield maintenance premiums are not treated as penalties.  *See* 15

Pa. C.S. § 1510(b) ("A prepayment premium determined by reference to the approximate spread

between the yield at issuance, or at the date of amendment of any of the terms, of an obligation

of a corporation and the yield at or about such date of an interest rate index of independent

significance and contingent upon a change in the ownership of the shares of or a default by or

other change in the condition or prospects of the issuer or any affiliate of the issuer shall be

deemed liquidated damages and shall not constitute a penalty.").

Pennbrook next challenges the sufficiency of Plaintiff's calculation, arguing that the

attached exhibit does not identify the Treasury Rate used, the discount methodology, the

amortization inputs, the calculation dates, or the present-value computation. But Plaintiff attached as an exhibit its Yield Maintenance Calculation Data, which provides the information Pennbrook argues is missing. Accordingly, Pennbrook has failed to identify a genuine dispute concerning the Yield Maintenance Premium.

### iv.    Special Servicing Fees

Lastly, Pennbrook challenges the Special Servicing Fees, arguing that Plaintiff has not shown that the Loan Agreement clearly incorporates and binds Pennbrook to the PSA-based compensation structure. That argument is unpersuasive.

Section 8.3 of the Loan Agreement provides that "[Pennbrook] shall be responsible for," among other things, "any fees and expenses of Servicer (including, without limitation, attorneys' fees and disbursements) in connection with any release of the Property, any prepayment, defeasance, assumption, amendment or modification of the Loan, any documents or matters requested by [Pennbrook], special servicing or work-out of the Loan or enforcement of the Loan Documents." In turn, Section 3.11(b) of the PSA provides that, "[a]s compensation for its activities hereunder, the Special Servicer shall be entitled to the Special Servicing Fee with respect to each Specially Serviced Loan." Thus, the Loan Agreement expressly makes Pennbrook responsible for fees arising from the special servicing or work-out of the Loan, and the PSA identifies the Special Servicing Fee to which the Special Servicer is entitled for those activities.

Pennbrook, meanwhile, cites no part of the record and offers no evidence beyond its conclusory assertion that it is not responsible for the fee set forth in the PSA. That is insufficient to create a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . .(A) citing to particular

14

parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or . . . (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). Accordingly, Pennbrook has not produced evidence sufficient to create a material dispute.

## IV.    MOTION TO APPOINT RECEIVER

Plaintiff has also moved to appoint a receiver. Because summary judgment on the foreclosure claim will be granted, Plaintiff's Motion to Appoint a Receiver will be denied as moot. *See*, *e.g.*, *Wells Fargo Bank, Nat'l Ass'n as Tr. for Registered Holders of J.P. Morgan Chase Com. Mortg. Sec. Corp., Multifamily Mortg. Pass-through Certificates, Series 2017-K724 v. MM-FCDC Partners, L.P.*, 2025 WL 2087784, at *7 (E.D. Pa. July 24, 2025) ("I will deny [Plaintiff's] Motion to Appoint a Receiver without prejudice because I am granting summary judgment on foreclosure at this time, but [Plaintiff] may renew if this relief proves inadequate.").

An appropriate order follows.

BY THE COURT:

S/ WENDY BEETLESTONE

_____

WENDY BEETLESTONE, C.J.

15